**M.S. CHAMBERS & SON, INC., et al., Plaintiffs,**

**v.**

**TAMBRANDS, INC., et al., Defendants.**

Civ. A. No. 85–0422–F.

United States District Court, D. Massachusetts.

Oct. 19, 1987.

Milton Jacobson, withdrew, Christopher M. Reeves, John C. Wirzbicki, Brown, Jacobson, Jewett & Laudone, P.C., Norwich, Conn., Alan S. Dambrov, Alice E. Zaft, Cooley, Shrair, Alpert, Labovitz & Dambrov, P.C., Springfield, Mass., for plaintiffs.

Albert Zakarian, Kathleen M. Hannon, Day, Berry & Howard, Hartford, Conn., for Tambrands.

Lawrence B. Wernick, Cohen, Rosenthal, Price, Mirkin, Berg & Wernick, P.C., Springfield, Mass., for Magnat.

## ORDER

FREEDMAN, Chief Judge.

Before the Court is the Magistrate's Memorandum regarding the imposition of sanctions on both plaintiffs' Connecticut counsel and plaintiff M.S. Chambers & Son, Inc. itself, jointly and severally. The memorandum, entered on September 17, 1987, assessed sanctions in the amount of $17,181.13. Although the Court feels that the Magistrate's decision constitutes a ruling on a non-dispositive matter, it will enter this Order confirming the Magistrate's decision, *no objection to the memorandum having been filed.*

It is hereby ordered that plaintiffs' Connecticut counsel and plaintiff M.S. Chambers & Son, Inc. be assessed sanctions in the amount of $17,181.13. These sanctions are to be paid within sixty (60) days to counsel for defendants Magnat Corp., Magnat Rolls, Inc. and Magnat Machinery, Inc.

It is so ordered.

## MEMORANDUM REGARDING MOTION OF DEFENDANTS MAGNAT CORP., MAGNAT ROLLS, INC. AND MAGNAT MACHINERY, INC. FOR SANCTIONS AGAINST BROWN, JACOBSON, JEWETT AND LAUDONE, P.C. AND/OR M.S. CHAMBERS & SON, INC.

September 17, 1987

MICHAEL A. PONSOR, United States Magistrate.

### I. INTRODUCTION.

Following amendment in 1983, Fed.R. Civ.P. 11 requires that "every pleading, motion and other paper of a party" be signed by at least one attorney and that:

> [t]he signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Where this rule is violated the court upon motion or upon its own initiative *"shall impose ... a reasonable attorney's fee."* (Emphasis supplied.)

Three defendants [1] have brought this Motion for Sanctions, seeking reasonable attorney's fees, on the ground that plaintiff

---

**1.** There are four defendants in this action: Magnat Corp., Magnat Rolls, Inc., Magnat Machinery, Inc. and Tambrands, Inc. The Motion for Sanctions is brought only by the three Magnat defendants. For simplicity, this group will be referred to as the "defendants" in the text of this memorandum.

and its attorney initially filed this suit in Connecticut when they knew or should have known this was an improper venue, and continued to prosecute this litigation in the name of a plaintiff who they knew, or should have known, was not entitled to any relief.

Because the court finds that the actions of plaintiff's counsel in this case constitute flagrant and costly violations of Rule 11, it will award defendants as a sanction a reasonable attorney's fee in the amount of $17,181.13.

## II. PROCEDURAL AND FACTUAL BACKGROUND.

This action was originally commenced by one of the two plaintiffs currently in this action, M.S. Chambers & Son, Inc. ("M.S. Chambers"), in May of 1985 in the Superior Court for the Judicial District of New London, Connecticut. The complaint included claims for breach of contract, interference with contractual relations and unfair or deceptive business practices. Defendants removed the case to the United States District Court for the District of Connecticut and shortly filed a Motion to Dismiss or Transfer, alleging lack of personal jurisdiction. The motion was supported by a 30-page memorandum thoroughly reviewing the applicable authorities and at least three affidavits. Plaintiff's counsel filed no formal opposition to the motion but, at the same time, when requested to assent, stated only that he would "abide by any decision that [U.S. District Court] Judge Cabranes made with respect to this matter." Affidavit of Milton L. Jacobson at ¶ 3. Following a conference in chambers on October 30, 1985 in which plaintiff was unable to offer any factual or legal opposition to the motion, Judge Cabranes granted the defendants' motion and transferred the case to this court.

The papers arrived here on November 6, 1985. On April 25, 1985, no answer having been filed, plaintiff filed an amended complaint, still naming M.S. Chambers as the only plaintiff. On May 9, 1985 defendants filed a Motion for More Definite Statement, alleging that the complaint confused the various Magnat defendants to such an extent that it was impossible to answer. The motion was allowed by Judge Freedman on May 23, 1986 and another amended complaint was filed on June 9, 1986. Again, M.S. Chambers was named as the only plaintiff.

On September 19, 1986 the co-plaintiff Chambers Steel Engraving Corporation ("Chambers Steel") made its first appearance in the case, in a motion to add an additional plaintiff. This motion was allowed by this Magistrate on October 21, 1986. However, despite the addition of the second plaintiff, no third amended complaint was filed, making it impossible to discern precisely where this second plaintiff fit into the litigation. The motion in support of the addition of Chambers Steel did state, at paragraph 2, that this new plaintiff "was the actual party to the contract referred to in the complaint, [and] it was the actual party damaged as the result of the interference with contractual relations." Motion at ¶ 2. On April 15, 1987 defendants filed a motion for summary judgment.

On May 12, 1987 plaintiff Chambers Steel, through new counsel, sought *further* leave to amend its complaint, now essentially eliminating M.S. Chambers from the lawsuit as a party plaintiff and assuming all the causes of action under the plaintiff Chambers Steel. The defendants opposed the motion to amend, pointing out that the elimination of M.S. Chambers as a party in this lawsuit might frustrate the defendants' counterclaim against M.S. Chambers for abuse of process. At the same time, defendants filed the Motion for Sanctions currently under review.

On June 18, 1987 this court issued its report and recommendation to the effect that the motion of these defendants for summary judgment on Counts 4 through 7 be allowed, on the ground that the plaintiff M.S. Chambers had no relationship to the Magnat defendants. In addition, based upon the arguments forwarded by the defendants, this court denied plaintiffs' motion to amend their complaint. Plaintiffs did not object to the recommendation re-

garding the Motion for Summary Judgment, but did object to the denial of their motion to amend, pointing out that, given the state of the complaint, allowance of the Motion for Summary Judgment as to Counts 4 through 7 might work to eliminate any cause of action by Chambers Steel against the Magnat defendants. At hearing on the Motion for Sanctions, the court gave the parties time to negotiate an amended complaint which could be filed with the assent of all parties. An amended complaint was recently filed and after some confusion still another amended complaint has arrived—the last item being the operative pleading which, it is hoped, will carry the plaintiffs' claims.

Plaintiffs now concede that the original plaintiff in this lawsuit, M.S. Chambers, in fact had no legally cognizable involvement in any of the events described in the complaint. There is ground to believe that plaintiffs' counsel knew, or should have known this fact, yet continued to prosecute the litigation in the name of M.S. Chambers through two amendments to the complaint.[2]

It is significant that M.S. Chambers, as a Connecticut corporation, is permitted to bring a lawsuit in Connecticut, the state of residence of its attorneys, whereas Chambers Steel, M. S. Chambers' wholly owned subsidiary, the real party in interest, is a Rhode Island corporation with offices in Cranston, Rhode Island, not registered to do business in Connecticut and not empowered to sue in Connecticut courts. If the lawsuit had originally been brought under the name of the proper plaintiff, it could not have been initiated in Connecticut.

Plaintiffs now concede that prosecution of this lawsuit under the name M.S. Chambers was a mistake. They concede that initiation of the suit in Connecticut was a mistake. They concede that they nevertheless refused to assent to a motion to transfer this case to Massachusetts and required defendants to obtain an order of the District Court of Connecticut to move the case to a proper forum. Finally, they concede that only after entry of new Massachusetts counsel, two years following the initiation of this lawsuit, and after two amendments to the complaint, was the real party in interest named as a plaintiff.

It is crucial to point out in evaluating this Motion for Sanctions, and as part of these factual findings, that *no explanation* or other effort to justify plaintiffs' conduct in this case has been offered. The memorandum of Milton Jacobson, Connecticut counsel for the Plaintiffs, does not even attempt to justify the decision to bring the lawsuit on behalf of M.S. Chambers in Connecticut. He does not claim any confusion, good faith error, or even inadvertence. His only argument, patently incorrect, is that the defendants have not been prejudiced by his conduct and that "the assertion of improper venue does not rise to the level of misconduct to which Rule 11 is addressed...." While not denying that he refused to assent to the motion to transfer when he did learn of it after filing, Attorney Jacobson argues that defendants are to be faulted for not contacting him and attempting to obtain his assent *before filing* the motion. Moreover, despite the impugnment of his professionalism, Attorney Jacobson did not appear to defend his conduct at the hearing on sanctions. Instead, an associate from his law firm was sent, who admitted on the record that he was not completely familiar with the course of the litigation and could offer no explanation for any of the decisions of Attorney Jacobson.

The opposition to the Motion for Sanctions now filed by plaintiffs' Massachusetts counsel suggests that, where a case has been improperly filed, the *only* remedy is a change of venue and that, given the transfer in this case, imposition of sanctions would be improper. This argument flies in the face of both the spirit and letter of the amended Rule 11.

Plaintiffs also contend that there is no proof of improper motive on their part in bringing this litigation in the name of a

---

**2.** The original demand letter sent by plaintiff's Connecticut counsel named Chambers Steel, not M.S. Chambers, as the injured party.

patently incorrect plaintiff in a patently improper forum. Of course, there will very rarely be *direct* evidence that a pleading has been "interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." In this case, however, to conclude that improper motive must have animated plaintiffs and/or their counsel is only to note that the emperor has no clothes. *No other* explanation is offered.

The court was not born yesterday. Initiation of this lawsuit in Connecticut provided plaintiffs with obvious tactical advantages. It was the home state of their attorneys, a forum they were familiar with. Defendants had no contacts, economic, professional or otherwise with Connecticut. The location of the suit put them at an obvious and severe disadvantage. The conclusion of improper purpose is ineluctable. The plain fact is that plaintiffs have gotten caught trying a tactical dirty trick, have not bothered to deny it, but argue sanctions should not be imposed.

### III. DISCUSSION.

 The advisory committee notes on the 1983 amendments to Rule 11 make it clear that these changes impose important new obligations upon counsel. The comments note that the Rule permits the court to award expenses, including attorney's fees where a litigant "acts in bad faith in instituting or conducting litigation."

> Greater attention by the district courts to pleading and motion abuses and the imposition of sanctions when appropriate should discourage dilatory or abusive tactics and help to streamline the litigation process by lessening frivolous claims or defenses.

It is important to note that the Rule requires an attorney to make reasonable inquiry prior to filing a pleading and *mandates* imposition of sanctions where the Rule is violated. The newly amended Rule has been briskly employed. A recent article by A. Leo Levin and Sylvan A. Sobel, at 36 Cath.U.L.Rev., 587 (1987) observes, at n. 24 that less than four years after the amendment over 700 district court cases

contained discussion of sanctions in connection with Rule 11. In *EBI, Inc. v. Gator Industries, Inc.*, 807 F.2d 1, (1st Cir.1986), the Court of Appeals upheld imposition of monetary sanctions for filing an unsupported Motion for Reconsideration of a previous order of the District Court. The court stated:

> To come forward ... and attempt to assert a cause of action which had never been supported by factual allegations ... is irresponsible.

*Id.* at 6.

In this case, plaintiffs do not even attempt to defend their decisions which, as will be seen below, indisputably have resulted in substantial expenditure of time and money by defendants.

Plaintiffs' citation of *Hot Locks, Inc. v. Ooh La La, Inc.*, 107 F.R.D. 751 (S.D.N.Y. 1985) as authority for the proposition that assertion of improper venue may not form the basis of a Rule 11 sanction is unavailing. In *Hot Locks* the court found that "when initially selected by plaintiff's attorney, the venue was not known to be improper." *Id.* Here, venue clearly was, or should have been known to be, improper when the complaint was filed. Plaintiffs do not argue to the contrary. Moreover, the continued prosecution of a lawsuit through two amendments, with an improper plaintiff, creates a level of egregiousness not found in the *Hot Locks* case.

For the foregoing reasons, this court hereby determines that imposition of sanctions under Rule 11 is appropriate.

### IV. AMOUNT OF SANCTIONS.

 The affidavit of Attorney Lawrence B. Wernick, Massachusetts counsel, indicates total fees and costs of $5,223.05, incurred by his clients directly as a result of the violations of Rule 11. Having reviewed the affidavit, the court concludes that the charges are fair and reasonable. They are supported by contemporaneous time records which carefully delineate the date, the tasks performed and the amount of time involved. I find the billing rates, ranging from $110 to $140 per hour, to be consistent with the rates generally charged

in this area by attorneys with Mr. Wernick's background and experience. Moreover, the claim for attorney's fees has been prepared to include only those activities necessitated by the plaintiffs' Rule 11 violations. Similarly, I find the claim of $11,958.08, submitted by defendants' Connecticut counsel to be fully justified. Again, the claim is supported by detailed, contemporaneous records, tailored to insure that only services necessitated by the plaintiffs' improper conduct are charged. The claimed rates are in line with rates charged in similar cases in this area. It is notable that Connecticut counsel made reductions in their bill to eliminate certain travel charges which they felt were unjustified. Beyond this, plaintiffs have made no effort to challenge the charges as detailed or the prevailing rates, nor have plaintiffs requested to do so.

Stepping back from the details of the attorney's fee claim, the court finds that the overall claim for attorney's fees expended is, while hefty, entirely reasonable. Plaintiff certainly knew, in choosing the improper forum, that, for example, defendants' Massachusetts counsel would have to spend time familiarizing himself with the case and then contacting appropriate Connecticut counsel. Duplication of effort was inevitable. The transparent purpose of filing in Connecticut, the *only* inferable purpose given the plaintiff's complete failure to offer any reasonable alternative explanation, was to impose a heavier burden upon the defendants. It is no more than poetic justice that the boulder which plaintiff attempted to load onto defendants' backs is now shifted onto the plaintiffs.

Accordingly, this court hereby assesses against plaintiff for its Rule 11 violations sanctions in the amount of $17,181.13, to be paid to counsel for the defendants.

The remaining issues are the parties responsible for payment of the sanction and the timing of payment. Responsibility for the improper conduct must fall mainly upon Connecticut counsel. Since it is possible, however, that the client itself participated in the decision, or urged heavy-handed tactical maneuvering, the court will impose the sanction upon both plaintiffs' Connecticut counsel and the plaintiff M.S. Chambers & Son, Inc. itself, jointly and severally. *See* Schwarzer, *Sanctions Under the New Federal Rule 11—A Closer Look,* 104 F.R.D. 181, 203 (1985).

As to timing, the advisory notes to the Amended Rule 11 state that this is to be within the discretion of the trial judge. The relatively large size of the sanction to be imposed here argues for restraint on the question of timing of payment. The court therefore refrains from indicating any specific date for the payment of the sanction but will convey this decision to the District Court, with the recommendation that the date for payment of the sanction be included with the ultimate disposition of the case.

It is So Ordered.[3]

---

**3.** It seems clear that this court's decision with regard to the imposition of sanctions constitutes a ruling on a non-dispositive matter, subject to review under a clearly erroneous standard. *See,* 28 U.S.C. § 636(b)(1)(A); Rule 2, Rules for U.S. Magistrates in U.S. District Court for the District of Massachusetts. To the extent that this ruling may be considered a report and recommendation under 28 U.S.C. § 636(b)(1)(B), the parties are hereby advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection thereto with the Clerk of this court *within ten (10) days* of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See U.S. v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *U.S. v. Vega,* 678 F.2d 376, 378–379 (1st Cir. 1982). *See also, Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985).